The defendant in his answer admitted the execution of the notes as charged in the bill, but averred that they were given upon an usurious consideration, which he could only prove by the witness whose name had been cut from them. He insisted that the plaintiff had mutilated the notes with the view of depriving him of this testimony, and prayed all the benefit of legal defense arising either from the usurious nature of the contract or from the mutilation set forth in the bill.
A replication to the answer was filed and proofs taken, but (116) they are not necessary to the elucidation of the case.
It is of great consequence to society that written contracts should be preserved free from every circumstance of suspicion. The old cases have laid down with much precision the law relative to deeds, that any alteration by the obligee will avoid the deed, as well as any alteration by a stranger in a material part; and modern cases have extended the rule to bills of exchange and promissory notes, in which it is still more applicable, from the number of hands through which they may pass. If the alteration might be made with impunity, with the chance of gaining if successful, and not losing in the event of detection, it is probable such attempts would be frequently made; and nothing is more likely to check them than its being understood that by tampering with a written instrument the creditor loses his debt. Courts of equity have, from an early period, acted on the principle of presuming everything in odium spoliatoris. In the time of Lord Ellesmere a decree was made against a defendant for an estate, upon the ground that he was vehemently suspected of having suppressed a deed.Lord Handson v. Lady Arundell, Hob., 109. And many cases have since occurred in chancery, and decided on the same ground. Sanson v. Nunnery, 2 Vern., 561; Hampden v. Hampden, 1 Bro. P. C., 250; Dalton v. Coatsworth, 1 P. W., 751.
The alteration of this note was in a most material point, tearing off the name of that witness by whom alone the consideration of the contract could be proved. If after a spoliation of this kind equity would relieve the creditor, it would encourage others in like circumstances to repeat the experiment. *Page 78 
(117) I remember a case, tried when I was at the bar, the ultimate decision of which in the Superior Court was believed to be entirely correct. The suit was instituted in the county court against executors on the bond of their testator. Between him and the plaintiffs there had been other dealings by open accounts, and some payments made, which though directed to be applied to the credit of the bond, were credited to the open account. The subscribing witness to the bond had been called on to witness this direction, and the defendant's attorney having pleaded non est factum, required the presence of the witness. But after the case was put to the jury, the plaintiff's attorney tore off the name of the witness, and the court allowed him to prove the obligor's handwriting. Upon appeal to the Superior Court, it was ruled without hesitation that the mutilation had destroyed the bond. The obligee afterwards made an unsuccessful attempt to recover the money in equity.
I think the bill should be dismissed, with costs.